UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>**Plaintiff,**<br><br>v.<br><br>SHREYANS DESAI AND SHREYSIDDH CAPITAL, LLC,<br><br>**Defendants.** | Civ. No. 11-5597 (WJM)<br><br>**OPINION** |

This matter comes before the Court on the Security and Exchange Commissions' (the "SEC" or the "Government") motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("FRCP"). Initiated at the same time as a corresponding criminal complaint, the SEC brought this action against Shreyans Desai ("Desai"), alleging that Desai violated Section 17(a) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77q(a), Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, Section 15(a) of the Exchange Act, 15 U.S.C. § 78o(a), and Sections 206(1) and 206(2) of the Investment Advisers Act of 1940 (the "Advisers Act"), 15 U.S.C §§ 80b-6(1), 80b-6(2). The motion is decided on the papers.[1] Fed. R. Civ. P. 78(b). For the reasons below, the Government's motion for summary judgment is **GRANTED**.

I.   BACKGROUND

  A.  Factual Background

The following facts are taken from the SEC's Statement of Undisputed Material Facts.[2] Between June 2009 and May 2010 Desai induced five investors to

---

[1] Desai's request that the Court hold oral argument in regards to this motion for summary judgment is denied. *See Cope v. Soc. Sec. Admin.*, 532 F. App'x 58, 60 (3d Cir. 2013) ("The District Court has discretion as to whether to hold a hearing.")

[2] Desai did not file a responsive statement of material facts, as required by Local Rule 56.1(a). *See Glazewski v. Corzine*, 2009 WL 5220168, at *1 (D.N.J. Dec. 31, 2009) (finding that a party's *pro se* status does not absolve him

1

trade options, futures, and currencies through his company, Shreysiddh Capital, LLC ("SSC").[3] (Plaintiff's Statement of Undisputed Material Facts ("SOF") ¶ 23, ECF No. 105-2). SSC is a New Jersey limited liability corporation that was formed in 2008, and which has never been registered with either the SEC or any other financial or regulatory agency. (*Id.* ¶ 2). Desai provided these investors with a client agreement that purported to outline information pertaining to the management of their accounts through SSC. (*Id.* ¶ 23). As part of this agreement, the investors agreed to pay Desai half of all profits earned by him. (*Id.* ¶ 26). In order to convince investors to invest with him, Desai told them that funds held by his company were insured and that SSC was a registered broker-dealer. (*Id.* ¶ 27). Desai also promised at least one of his investors that he would keep investor money in segregated accounts. (*Id.* ¶ 32). In regards to himself, Desai claimed that he had securities licenses and that he had previously worked as a day trader for two years. (*Id.* ¶ 27; Declaration of Urjo N. Dhyan ("Dhyan Dec'l") ¶ 3, ECF No. 105-31). In total, Desai received $247,558.29 from the investors. (SOF ¶ 23).

At the outset, a portion of the monies that Desai received were never deposited in any brokerage account held by SSC. Urjo Dhyan gave a total of $100,000 to Desai, but only $90,000 was transferred to a brokerage account. (*Id.* ¶ 35). The rest of the funds were used for expenses unrelated to the investor's investment. (*Id.*) Similarly, Desai—upon receiving $70,000 from three investors—took $5,000 to pay for various expenses, including payments to Best Buy, Dollar Tree, Office Depot, Walmart, and AT&T. (Declaration of George O'Kane ("O'Kane Dec'l") ¶ 16, ECF No. 105-4). From November 2008 to February 2011, Desai spent over $141,000 from the bank account that held investors' funds on expenses unrelated to their investments. (*Id.* ¶ 17). Desai also transferred a portion of these funds to foreign exchange market accounts. (*Id.* ¶ 18).

In order to cover up his activities, Desai created account statements showing extremely high profits and emailed these false statements to Dhyan and the other investors. (SOF ¶ 37). Moreover, Desai co-mingled the investor's funds, which he then used on at least one occasion to demonstrate increases in the value of the investments. (*Id.* ¶ 44). Pursuant to the investors' agreements with SSC, Desai deducted his 50% commissions from the accounts based on the false profits he was

---

of the requirement to file a response to an adversary's statement of material facts under Local Rule 56.1(a)). Consequently, the SEC's statement of material facts is unopposed. Fed. R. Civ. P. 56(e).
[3] Other than Urjo Dhyan ("Dhyan"), the SEC has listed these investors by their initials: R.M., K.C., S.N. and A.N.

reporting. (*Id.* ¶ 43). Desai also traded securities in the brokerage account of a sixth investor (N.P.) during this time. Desai engaged in the same behavior delineated above—inflating account values and presenting false statements—in order to receive commissions totaling $68,021 on the purported trades he undertook in the brokerage account. (*Id.* ¶ 24).

Upon being confronted by Dhyan regarding the fraudulent account statements, and after Dhyan requested that Desai close his account, Desai entered into a settlement agreement with Dhyan for $349,000, of which only $60,000 was ultimately paid. (*Id.* ¶ 49). Around the same time, as the SEC was investigating SSC, Desai returned a total of $148,350 to the other investors and entered into settlement agreements with most of them. (*Id.* ¶ 58). However, none of the investors received the large profits that Desai had purportedly generated. (*Id.* ¶ 59).

### B. Procedural Background

As a result of its investigation, on September 26, 2011, the Government filed a Criminal Complaint against Desai (the "parallel criminal action"). *United States v. Desai*, No. 2:12-cr-00330 (D.N.J. Sept. 26, 2011). Concurrently, the SEC filed the instant civil action against Desai and SSC. After the SEC filed an Amended Complaint on July 24, 2013, this Court entered a default judgment against SSC, enjoining SSC from violating Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, Section 17(a) of the Securities Act, Section 15(a) of the Exchange Act, and Sections 206(1) and 206(2) of the Advisers Act as well as ordering SSC to pay disgorgement of $116,858.29 and prejudgment interest of $13,865.33. The proceeding against Desai was stayed pending the completion of the parallel criminal action.

On May 5, 2014, Desai entered a guilty plea to two counts of wire fraud in the parallel criminal action. On December 3, 2014, this Court entered a criminal judgment against Desai sentencing him to fifteen months imprisonment followed by three years of supervised release. Moreover, Desai was ordered to pay restitution of $90,000 to Urjo Dhyan and $31,260 to N.P. On January 26, 2015, Desai appealed his guilty plea to the Third Circuit. *United States v. Desai*, No. 15-1105 (3d Cir. Jan. 15, 2015). The Third Circuit denied his appeal on August 21,

2015.[4] In the interim, and prior to the Third Circuit's denial of the appeal, the SEC filed this motion for summary judgment.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Smith v. Johnson & Johnson*, 593 F.3d 280, 284 (3d Cir. 2010). On a summary judgment motion, the moving party must demonstrate that no genuine issue of material fact exists. *Celotex*, 477 U.S. at 323. A factual dispute is genuine if "a reasonable jury could return a verdict for the non-moving party," and is material if it could affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court considers all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007). If the non-moving party fails to demonstrate beyond a "mere scintilla" of evidence that a genuine issue of material fact exists, then the Court must grant summary judgment. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied*, 507 U.S. 912 (1993).

## III.   DISCUSSION

### A.  No Genuine Issues of Material Facts

The SEC argues that Desai's guilty plea in his criminal action requires a finding of liability in this civil action pursuant to the doctrine of collateral estoppel. "Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Montana v. United States*, 440 U.S. 147, 153 (1979). The Third Circuit has held that, where "a conviction is the result of a guilty plea, its preclusive effect extends to all issues that are necessarily admitted in the plea." *Anderson v. C.I.R.*, 698 F.3d 160, 164 (3d Cir. 2012). The acts that were the predicate of Desai's guilty plea in

---

[4] Desai has filed two interlocutory appeals in the instant action, both of which have been dismissed by the Third Circuit for lack of jurisdiction. *See United States v. Desai*, No. 15-1037 (3d Cir. Jan. 7, 2015); *United States v. Desai*, No. 15-1436 (3d Cir. Feb. 23, 2015). Desai also filed an appeal of Magistrate Judge Falk's February 26, 2015, Order, which was denied by this Court. (Docket No. 124.)

the parallel criminal action are also the same alleged acts in the instant civil action. Moreover, both actions concern the same victims. *Compare* Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment ("Plaintiff's Motion") Ex. 7, ECF No. 105-50 *with* SOF ¶ 23. Though Desai appealed his guilty plea to the Third Circuit, and also asked this Court to stay this proceeding in the interim, the Third Circuit has since denied Desai's appeal. *See supra* n. 4. Thus, Desai is estopped from denying the issues that were admitted in his prior guilty plea.

Additionally, Desai has not provided any evidence in support of his opposition to this motion for summary judgment. To the contrary, Desai argues that issues of material fact exist because Desai has been unable to cross-examine witnesses, send interrogatories, and obtain affidavits.[5] (Defendant's Opposition to Summary Judgment and Application for Stay ¶ 6). But, Desai does not demonstrate how he was prohibited from taking the necessary depositions or contacting the relevant individuals with connections to this case. Though Desai wished to send interrogatories to non-parties, Rule 33 of the FRCP clearly prohibits this. Moreover, the only individual that Desai was not allowed to contact was Mr. Siddharth Patel, which was ordered as part of the parallel criminal action. However, even this restriction was lifted by Judge Shipp, who was presiding over the criminal trial at the time. (SEC Letter from March 2, 2012, ECF No. 19). In addition, as demonstrated by the submissions in the record, Desai failed to comply with his own discovery obligations. (Docket Nos. 54, 59, 61). Parties in civil litigation primarily bear the burden of conducting their own discovery, and Desai's status as a *pro se* litigant does not obviate his responsibility to abide by the FRCP. *See Serrano v. Pigos*, 2013 WL 655741 at *2 (M.D. Pa. 2013) (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993))) (stating that leniency "has its limits and litigants, even those appearing *pro se*, 'cannot flout procedural rules—they must abide by the same rules that apply to all other litigants.'")

Desai's only other argument tangentially related to the merits of the instant motion is that a judgment against him would constitute "double jeopardy." Desai's papers are unclear as to whether he is referring to the default judgment already entered against SSC or the parallel criminal action. Regardless, this argument is

---

[5] Desai also argues that summary judgment should not be granted because the SEC did not serve its papers on Desai's alleged partner, Mr. Siddharth Patel. However, Mr. Patel is not a party to this proceeding, and neither the federal nor local rules require such service.

5

without merit. The Third Circuit has found that "joint-and-several liability is appropriate in securities cases when two or more individual or entities collaborate . . . in engaging in the illegal conduct." *SEC v. Hughes Capital Corp.*, 124 F.3d 449, 455 (3d Cir. 1997). Here, the Government has put forth an argument that Desai obtained money from investors and perpetrated his fraud through SSC, which he controlled. Thus, the Government may seek to hold him jointly and severally liable along with SSC for the disgorgement of any ill-gotten gains. In regards to the parallel criminal action, a line of cases relying on U.S. Supreme Court precedent have found that disgorgement, civil fines, and injunctions against a defendant, who has already been convicted and ordered to pay restitution on the same underlying securities violations, does not violate the Double Jeopardy Clause. *Hudson v. United States*, 522 U.S. 93, 94 (1997); *see also United States v. Tommassello*, 178 F. App'x 139, 139 (3rd Cir. 2006) ("The permanent injunction against Tommassello in the SEC action is not a criminal punishment and did not trigger the protections of the Double Jeopardy Clause"); *SEC v. Palmisano*, 135 F.3d 860, 865 (2d Cir. 1998) ("Congress's intent clearly favors classifying disgorgement and the fines at issue here as civil."); *U.S. v. Van Waeyenberghe*, 481 F.3d 951, 958–59 (7th Cir. 2007).

Since Desai does not put forth any dispute of a material fact that contradicts the evidence presented by the SEC, the Court finds that there are no genuine issues as to any material facts.

### B. Violation of Federal Securities Laws

### i. Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5

In its first and second causes of action, the SEC alleges violations of § 17(a) of the Securities Act and § 10(b) of the Exchange Act and Rule 10b-5 thereunder. These statutes and rule all proscribe fraudulent conduct in connection with the purchase and/or sale of securities, and the elements required to prove violations are essentially the same. *S.E.C. v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1467 (2d Cir. 1996). Consequently, the SEC must show that: (1) the defendant made a misrepresentation, or an omission where there was a duty to speak, or used a fraudulent device; (2) the misrepresentation or omission was material; (3) the defendant made the misrepresentation or omission with scienter; (4) the defendant made the misrepresentation or omission in connection with the sale of a security;

and (5) the defendant made the misrepresentation or omission in connection with interstate commerce or the mails. *First Jersey Sec.*, 101 F.3d at 1467; *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1417 (3d Cir. 1997).

Based on Desai's prior guilty plea and the SEC's well-supported motion, these elements have been clearly established. While operating SSC, Desai made numerous misrepresentations in order to induce investors to invest with his company. Such misrepresentations included that "he had a securities brokerage license" and that he had accumulated significant profits on behalf of other investors. (Dhyan Dec'l ¶ 3). Once invested, Desai misappropriated the investors' funds and provided his clients with falsified records when they questioned his results or asked for the return of their money. (SOF ¶¶ 37, 40, 44; Dhyan Dec'l ¶¶ 10-11, 14; O'Kane Dec'l ¶¶ 24-25). These various misrepresentations were material, as a reasonable investor would want to know that his financial advisor lied about qualifications and misappropriated his funds, and Desai's plea in the prior criminal matter demonstrates that he took these actions with the intent to defraud. *See Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.2 (1976) (finding that "a mental state embracing intent to manipulate or defraud" demonstrated scienter); *S.E.C. v. Pasternak*, 561 F. Supp. 2d 459, 499 (D.N.J. 2008).

### ii. Advisers Act Sections 206(1) and 206(2)

The SEC also asserts violations of Sections 206(1) and 206(2) of the Advisers Act, which prohibit investment advisors from using "any device, scheme or artifice to defraud any client or prospective client," and from engaging "in any transaction, practice or course of business which operates as a fraud or deceit upon any client or prospective client." 15 U.S.C. § 80b-6. Establishing a violation of Section 206(1) requires a demonstration of scienter, but such a showing is not required to prove violations of Section 206(2). *Steadman v. SEC*, 603 F.2d 1126, 1134 (5th Cir. 1979).

The fraudulent conduct detailed above clearly establishes violations of Section 206(1) and 206(2) of the Advisors Act. *See SEC v. Haligiannis*, 470 F. Supp. 2d 373, 383 (S.D.N.Y. 2007) ("Facts showing a violation of Section 17(a) or 10(b) by an investment adviser will also support a showing of a Section 206 violation.") Desai's guilty plea confirms that he was acting as an investment advisor, and that Desai agreed to receive as a fee a percentage of all profits generated in the investors' accounts. *See* Plaintiff's Motion Ex. 7; *see also* 15 U.S.C. § 80b–2(11) (An "[i]nvestment advisor" is "any person who, for

7

compensation, engages in the business of advising others . . . as to the value securities, or as to the advisability of investing in, purchasing, or selling securities . . . .") Desai then proceeded to misappropriate these funds and lied to his investors regarding their money in clear breach of the Advisers Act. Therefore, the SEC is entitled to summary judgment.

### iii. Exchange Act Section 15(a)

Lastly, the SEC alleges a violation of Section 15(a) of the Exchange Act. Section 15(a) requires that any person acting as a broker—"any person engaged in the business of effecting transactions in securities for the account of others"—must register with the SEC. 15 U.S.C. § 78c(4); 15 U.S.C. § 78o(a). There is no question that Desai acted as a broker by actively soliciting potential investors, possessing investor funds, and receiving compensation for the transactions. In addition, though Desai held himself out as having a "securities brokerage license," (Dhyan Dec'l ¶ 3), during his guilty plea Desai admitted that he did not possess a valid license to trade securities for other individuals. Plaintiff's Motion Ex. 7. Consequently, the Court grants the Government's motion for summary judgment as to Desai's liability under Section 15(a) of the Exchange Act.

## C. Relief

Should its request for summary judgment be granted, the Government has moved the Court to enjoin Desai from future violation of federal securities laws, order disgorgement and prejudgment interest, and levy an appropriate civil fine.

### i. Injunctive Relief

To determine whether an injunction should issue in a securities case, a Court must consider "whether there is a reasonable likelihood that the defendant, if not enjoined, will again engage in the illegal conduct." *SEC v. Bonastia*, 614 F.2d 908, 912 (3d Cir. 1980). In determining whether injunctive relief is warranted, the Third Circuit has articulated five factors: (1) the degree of scienter involved; (2) the isolated or repeated nature of the violations; (3) the defendant's recognition of the wrongful nature of the conduct; (4) the sincerity of the defendant's assurances, if any, against future violations; and (5) the likelihood that the defendant's occupation will present opportunities for future violations. *Id.* The purpose of injunctive relief is to protect the investing public and deter future infractions of the securities laws. *Id.*

Based on an analysis of the relevant factors, the Court finds that Desai should be enjoined from future violation of the federal securities laws. Desai deceived multiple investors in order to obtain their money, and did so over a period of approximately two years. During this time, Desai misappropriated these investors' funds for his own benefit. In addition, when confronted by investors, Desai attempted to conceal the actual value of the accounts and sought to maintain control of the funds. This effort to mask his violations of federal securities law demonstrates a high degree of scienter. *See SEC v. Young*, 2011 WL 1376045, at *6 (E.D. Pa. April 12, 2011) (finding that defendant's admission that he provided false information to investors "to hide his conversion of their funds" established scienter.) Moreover, Desai's appeal of his previously agreed upon guilty plea evidences a failure to recognize the wrongfulness of his conduct, and leads the Court to conclude that there is a substantial likelihood that Desai will engage in future violations of the federal securities laws if not enjoined.

Therefore, the SEC's request for injunctive relief is appropriate.

### ii. Disgorgement and Prejudgment Interest

Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), and § 27 of the Exchange Act, 15 U.S.C. § 78aa, allow for disgorgement of all profits derived from violating the securities laws. "Disgorgement is an equitable remedy designed to deprive a wrongdoer of his unjust enrichment and to deter others from violating securities laws." *SEC v. Hughes Capital Corp.*, 124 F.3d 449, 455 (3d Cir. 1997) (quoting *SEC v. First City Fin. Corp.*, 281 U.S. App. D.C. 410, 890 F.2d 1215, 1230 (D.C. Cir. 1989)). "The SEC has the initial burden of establishing that the disgorgement figure 'reasonably approximates the amount of unjust enrichment.'" *SEC v. Chester Holdings, Ltd.*, 41 F. Supp. 2d 505, 528 (D.N.J. 1999) (quoting *First City Fin. Corp.*, 890 F.2d at 1232). "The SEC need not 'trace every dollar of proceeds misappropriated by the defendants' but must present a reasonable approximation of the illicit profits." *Id.* (quoting *SEC v. Hughes Capital Corp.*, 917 F. Supp. 1080, 1085 (D.N.J. 1996), *aff'd*, 124 F.3d 449 (3d Cir. 1997)). Upon presentation of such a reasonable approximation, the burden then shifts to the defendant to "demonstrate that the disgorgement figure was not a reasonable approximation." *First City Fin. Corp.*, 890 F.2d at 1232. "All doubts concerning the approximation are to be resolved against defendants." *Chester Holdings, Ltd.*, 41 F. Supp. 2d at 528 (citations omitted).

Here, Desai persuaded investors to invest $247,558.39 with him, and collected $68,021 in "fees" by overstating the value in the accounts. Since Desai returned $148,350 to the investors, the SEC argues that Desai was unjustly enriched in the amount of $167,229.39. The SEC also asks this Court to order Desai to pay prejudgment interest on this amount. "This Court has the discretion to award—or not award—prejudgment interest on damages awarded pursuant to the federal securities laws." *Chester Holdings, Ltd.*, 41 F. Supp. 2d at 529. Proof of the defendant's scienter is sufficient to justify an award of prejudgment interest. *Id.* Courts have calculated prejudgment interest "based on the IRS rates for underpayment of taxes." *Hughes Capital Corp.*, 917 F. Supp. at 1090 (citing 26 U.S.C. § 6621(a)(2)). Using these rates, the SEC has calculated prejudgment interest at $35,860.31 as of February 20, 2015.

Desai does not contest these amounts, but instead argues that a portion of the sums the SEC seeks to disgorge are in foreign exchange market ("Forex") accounts and are therefore outside the SEC's jurisdiction. The funds Desai received from his investors were transferred into the Forex accounts. O'Keefe Dec'l ¶ 9-10. The sums in these accounts thus originated from Desai's fraudulent investment scheme, which is the basis of both Desai's plea agreement in the parallel criminal action and the complaint in the instant civil proceeding. Consequently, the fact that Desai transferred these fraudulently obtained funds to Forex accounts does not exempt them from regulation under federal securities laws, prohibit the SEC from filing suit in regards to these sums, or deprive this Court of jurisdiction in ordering their disgorgement.

Since Desai fails to offer any credible evidence contradicting the SEC's calculations, disgorgement is ordered in the amount of $167,229.39 along with prejudgment interest.

### iii. Civil Penalties

Lastly, the SEC asks the Court to order civil penalties against Desai in the amount of either: $600,000 (the number of claims in the Complaint); $900,000 (the number of investors Desai defrauded); $4,350,000 (the number of investments or payments Desai obtained through fraud); or $167,229.39 (the amount of Desai's pecuniary gain). The Securities Act, the Exchange Act, and the Advisers Act all allow for the levy of civil monetary penalties. 15 U.S.C. § 77t(d); 15 U.S.C. § 78u(d)(3); 15 U.S.C. § 80b-9(e). Though these statutes provide maximum penalties, the district court has discretion in determining the amount of the penalty.

*See S.E.C. v. Lazare Industries, Inc.*, 294 F. App'x 711, 715 (3d Cir. 2008). The court must keep in mind that a civil penalty is intended to both punish and serve as a deterrent mechanism. *Haligiannis*, 470 F. Supp. 2d at 386. Courts look to a number of factors to determine whether a fine should be imposed, including "(1) the egregiousness of the defendant's conduct; (2) the degree of the defendant's scienter; (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the defendant's conduct was isolated or recurrent; and (5) whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition." *Id.* (citing *SEC v. Coates*, 137 F. Supp. 2d 413, 429 (S.D.N.Y. 2001)).

The Court has already considered a number of these factors and finds that third-tier penalties are appropriate here, because Desai's conduct involved "fraud, deceit, [and] manipulations" that resulted in "substantial losses." Exchange Act § 21(d)(3)(B)(iii), 15 U.S.C. § 78u(d)(3)(B)(iii). Moreover, based on the evidence, Desai acted with a high degree of scienter, as he repeatedly engaged in fraudulent conduct with multiple investors and has failed to take responsibility for his actions. *See supra* at 6. However, it is unclear to the Court that Desai has the financial wherewithal to pay a fine in line with the SEC's higher monetary suggestions. In addition, Desai is currently in prison serving a fifteen-month sentence, followed by three years of supervised release. These factors suggest that a civil penalty equaling the disgorgement amount is appropriate here. *See, e.g.*, *SEC v. Yuen*, 272 F. App'x 615, 618 (9th Cir. 2008); *S.E.C. v. Leffers*, 289 F. App'x 449, 452 (2d Cir. 2008). Accordingly, the Court orders Desai to pay a civil penalty of $167,229.39.

## IV. CONCLUSION

For the reasons set forth above, the Government's motion for summary judgment is **GRANTED**. The Government shall submit a proposed order containing its prejudgment interest calculations to the date of the accompanying order and the per diem interest charge that shall be applied until the date judgment is entered.

/s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: November 5, 2015**